Filed 1/21/16  In re Giselle M. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re GISELLE M. et al., Persons Coming Under the Juvenile Court Law. | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br>    Plaintiff,<br><br>    v.<br><br>GISELLE M. et al.,<br>    Objectors and Appellants;<br><br>JOSEPH M.,<br>    Defendant and Respondent. | B257530<br><br>(Los Angeles County<br>Super. Ct. No. CK93749) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br>    Plaintiff and Respondent,<br><br>    v.<br><br>GISELLE M. et al.,<br>    Objectors and Appellants;<br><br>LUCIA L.,<br>    Defendant and Respondent;<br><br>JOSEPH M.,<br>    Defendant and Appellant. | B261477<br><br>(Los Angeles County<br>Super. Ct. No. CK93749)<br><br><br>ORDER MODIFYING OPINION;<br>NO CHANGE IN JUDGMENT |

It is ordered that the opinion filed herein on January 19, 2016, and not certified for publication, be modified as follows:

1.    On page 2, counsel for Objectors and Appellants reads as follows:

> "Roni Kieller, under appointment by the Court of Appeal, for Objectors and Appellants."

It should read:

> "Roni Keller, under appointment by the Court of Appeal, for Objectors and Appellants."

This order does not change the judgment.

| | | |
|---|---|---|
| PERLUSS, P. J. | ZELON, J. | SEGAL, J. |

Filed 1/19/16  In re Giselle M. CA2/7 (unmodified version)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
## SECOND APPELLATE DISTRICT
## DIVISION SEVEN

In re GISELLE M. et al., Persons Coming Under the Juvenile Court Law.

| | |
|---|---|
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br>    Plaintiff,<br><br>    v.<br><br>GISELLE M. et al.,<br>    Objectors and Appellants;<br><br>JOSEPH M.,<br>    Defendant and Respondent. | B257530<br><br>(Los Angeles County<br>Super. Ct. No. CK93749) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br>    Plaintiff and Respondent,<br><br>    v.<br><br>GISELLE M. et al.,<br>    Objectors and Appellants;<br><br>LUCIA L.,<br>    Defendant and Respondent;<br><br>JOSEPH M.,<br>    Defendant and Appellant. | B261477<br><br>(Los Angeles County<br>Super. Ct. No. CK93749) |

APPEALS from orders of the Superior Court of Los Angeles County, Julie Fox Blackshaw, Judge. Affirmed.

Roni Kieller, under appointment by the Court of Appeal, for Objectors and Appellants.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Defendant, Respondent and Appellant Joseph M.

Mary C. Wickham, Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Jeanette Cauble, Senior Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Defendant and Respondent Lucia L.

## INTRODUCTION

The juvenile court found that Lucia L. had failed to protect her children, Giselle M. and Danielle M., and removed them from Lucia's physical custody while the children's presumed father, Joseph M., was living abroad. When Joseph returned to Los Angeles, the Los Angeles County Department of Children and Family Services filed a subsequent dependency petition alleging that Joseph had failed to protect the children by leaving them in Lucia's care when he knew or reasonably should have known that Lucia would fail to protect them. Joseph filed a petition to vacate the order declaring Giselle and Danielle dependents of the court and denying Joseph reunification services, arguing that the Department had not given him proper notice of the proceedings. The court granted Joseph's petition to vacate. The court later found that Joseph had failed to protect the children by leaving them in Lucia's care, denied his request for physical custody of the children, and ordered family reunification services for both Lucia and Joseph.

Giselle and Danielle appeal from the order granting Joseph's petition to vacate and the order granting Lucia and Joseph family reunification services. Joseph appeals from the order sustaining the allegation that he had failed to protect the children and from an

2

order requiring him to have random drug and alcohol testing and monitored visits with the children. With the exception of the last order, which the juvenile court has since changed to allow for unmonitored visitation, we affirm all of the orders.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Prior Dependency Proceedings*

Joseph and Lucia began living together in 1996 and married in 2003. They have two children, Giselle, born in 2002, and Danielle, born in 2007. Lucia worked as a school teacher and had a history of alcohol abuse. Joseph cared for the children at home. He smoked marijuana to relieve his back pain.

In October 2010 Joseph moved to South Africa to work as a missionary. He intended to stay in South Africa for three months, but ended up living there for more than three years. Joseph left Giselle and Danielle in Lucia's care with the understanding that Lucia's sister, Germaine L., would move in and help with the children. Germaine did move in with Lucia and the children, but she and Lucia argued, and Germaine moved out after only two weeks.

In October 2010 Lucia was arrested for driving under the influence while Giselle was a passenger in the car.[1] Lucia agreed to participate in voluntary family maintenance services. Lucia was again arrested for driving under the influence in January 2011 and in February 2011. Lucia was convicted of misdemeanor driving under the influence, and a count of cruelty to a child was dismissed. Lucia's family maintenance services concluded in June 2011 when the Department determined that the children were no longer at risk of harm.

---

[1]     In February 2003 the Department learned of an allegation that Lucia had been driving under the influence of alcohol while Giselle was a passenger in the car. The Department interviewed Lucia and Joseph, and determined that the allegation was unsubstantiated.

In June 2012 the Department filed a dependency petition, and in July 2012 the Department filed a first amended petition. The Department did not detain the children, and they remained in Lucia's custody. On August 7, 2012 the juvenile court found true allegations that (1) Lucia had a 20-year history of alcohol abuse and continued to abuse alcohol, rendering her unable to provide regular care for Giselle and Danielle (Welf. & Inst. Code, § 300, subd. (b));[2] (2) on March 14, 2012 Lucia rode a bicycle while under the influence of alcohol with Giselle as a passenger (*id.*, subds. (b), (j)); (3) on May 26, 2012 Lucia and a male companion were under the influence of alcohol or drugs when they had a physical altercation in the presence of the children in which Lucia sustained two black eyes (*id.*, subd. (b)); and (4) Joseph, whose location was unknown, had failed to provide Giselle and Danielle with the necessities of life, endangering their physical and emotional health, safety, and well-being (*id.*, subds. (b), (g)).[3] Lucia received family maintenance services, and the court concluded the case in February 2013 with an order granting Lucia legal and physical custody of Giselle and Danielle.

One month later the Department received a phone call from Danielle's school stating that Lucia had arrived at the school intoxicated to walk home with Danielle. On June 4, 2013 the Department detained Giselle and Danielle and placed them with Germaine.

---

[2]     All undesignated statutory references are to the Welfare and Institutions Code.

[3]     The juvenile court did not sustain the allegations that Joseph and Lucia had physically abused Giselle and Danielle by striking them on the buttocks with a belt. In addition, although we do not have the entire record of the prior dependency proceeding, the court's order sustaining the allegation under section 300, subdivision (g), was probably erroneous. Subdivision (g) requires that the parent leave the child "without any provision or support," and allows a parent to leave a child with a relative or other adult custodian who is willing and able "to provide care or support for the child," as Joseph did here, without triggering juvenile court jurisdiction. Joseph, however, did not appeal or otherwise challenge the subdivision (g) finding in the prior dependency case.

4

B.     *The June 2013 Juvenile Dependency Petition*

On June 13, 2013 the Department filed another juvenile dependency petition. The petition alleged that Lucia L. frequently abused alcohol and was unable to adequately supervise, protect, or provide regular care for Giselle and Danielle. The petition alleged that Joseph was the children's alleged father and that his location was unknown. The petition also alleged that the Department had removed the children from Lucia's care and placed them with Germaine. The juvenile court detained Giselle and Danielle, placed them in Germaine's custody, and ordered monitored visits, and drug and alcohol counseling and testing, for Lucia. The court found that Joseph was the presumed father of Giselle and Danielle.

C.     *The Jurisdiction and Disposition Hearings*

On July 12, 2013 the juvenile court conducted a jurisdiction hearing. The court sustained the petition on the ground of failure to protect Giselle and Danielle (§ 300, subd. (b)).

On August 8, 2013 the juvenile court conducted a disposition hearing. The court found that there was a substantial danger to the children's physical health, or the children were suffering severe emotional harm, and that there was no reasonable means to protect them without removal from Lucia's physical custody. The court declared Giselle and Danielle dependents of the court and removed them from Lucia's physical custody. The court ordered family reunification services for Lucia, but not for Joseph, stating that the court had previously terminated his family reunification services.[4]

---

[4]    The Department had requested a finding under section 361.5, subdivision (b)(1), that Joseph was not entitled to reunification services because the Department could not locate him despite a diligent search. The juvenile court did not make such a finding.

D.    *The Six–Month Review Hearing*

On February 6, 2014 the juvenile court conducted a six–month review hearing. Joseph, who had returned to California in January 2014 and was residing again with Lucia, made his initial appearance in these proceedings at that time. The court ordered monitored visits for Joseph and continued the review hearing.

E.    *The Subsequent Juvenile Dependency Petition*

On April 11, 2014 the Department filed a subsequent dependency petition (§ 342) alleging that Joseph's marijuana use rendered him unable to provide regular care for Giselle and Danielle and endangered their physical health and safety. The petition also alleged that Joseph had failed to protect the children by leaving them in Lucia's care when he knew or reasonably should have known that Lucia abused alcohol, and that his failure to protect endangered the children's physical health and safety.

F.    *Joseph's Petition to Vacate*

On April 21, 2014 Joseph filed a petition under section 388 to vacate all findings and orders as to him at the prior jurisdiction and disposition hearings. He argued that the Department had failed to make reasonable efforts to locate him and failed to give him proper notice, in violation of section 291 and due process. Giselle and Danielle opposed Joseph's petition to vacate, arguing that Joseph had received actual notice of the proceedings in August 2013 from the social worker by email and telephone. They also argued that the petition was untimely because Joseph failed to seek relief promptly after receiving actual notice of the proceedings.

On June 23, 2014 the juvenile court granted the petition to vacate because it was in the children's best interest. The court stated that it was granting the petition based on new evidence that the Department had failed to provide statutory notice to Joseph. The court noted that Joseph was a "non-offending" parent in the original petition, continued

6

the 12-month permanency review hearing, and ordered monitored visits for Joseph.[5] Giselle and Danielle timely appealed the order granting Joseph's section 388 petition (case No. B257530).

G. *The Jurisdiction and Disposition Hearing on the Subsequent Dependency Petition*

On December 17 and 18, 2014 the juvenile court conducted a jurisdiction and disposition hearing on the subsequent dependency petition, together with a 12–month permanency review hearing on the original juvenile dependency petition. The court sustained the allegation under section 300, subdivision (b), that Joseph had failed to protect the children by leaving them in Lucia's care when he knew or reasonably should have known that Lucia abused alcohol, thus endangering the children's physical health and safety. The court dismissed the allegation that Joseph's marijuana use rendered him unable to provide regular care for the children.

Joseph asked the court to grant Lucia and him physical custody of Giselle and Danielle. Pursuant to section 361.2, the juvenile court found that Joseph was a noncustodial parent at the time the Department filed the petition and that placement of Giselle and Danielle with Joseph would be detrimental to the children's safety, protection, and physical and emotional well-being. The court ruled that Giselle and Danielle would remain dependents of the court and ordered family reunification services for Lucia and Joseph. The court also granted Germaine's request for de facto parent status.

_____

[5]     Joseph did not seek custody of the children or request family reunification services in his petition to vacate or at the hearing, although his declaration attached to the petition stated that he was "asking for placement of my daughters or in the alternative for family reunification services." The juvenile court did not address Joseph's request for custody or family reunification services at the hearing on his petition to vacate.

The juvenile court also ordered random drug and alcohol testing for Joseph. The court stated that Joseph should discuss with his doctor alternative means to control pain and that Joseph had to show decreasing levels of marijuana. The court stated that Joseph could seek a change in the order if his doctor advised that there were no reasonable alternatives to marijuana use. The court also ordered monitored visits for Joseph.

Joseph timely appealed these orders (case No. B261477). Giselle and Danielle also filed a notice of appeal from "the disposition order grant[ing] parents reunification services."

## DISCUSSION

A.  *The Juvenile Court Did Not Abuse Its Discretion in Granting Joseph's Petition to Vacate*

In their appeal from the order granting Joseph's petition to vacate, Giselle and Danielle argue that Joseph has waived his right to challenge, and is equitably estopped from challenging, the jurisdiction and disposition orders because he had actual notice of the jurisdiction and disposition hearings and he did not appear or ask for a continuance.[6] They also argue that Joseph failed to show any prejudice from these orders because he did not identify any evidence he would have presented had he appeared at the jurisdiction and disposition hearings, and he did not show that his participation in the proceedings would have affected the outcome.

Section 388 provides for modification of juvenile court orders when the moving party presents new evidence or shows a change of circumstances and demonstrates that

---

[6]     The Department takes no position in the appeal by Giselle and Danielle from the order granting Joseph's petition to vacate.

8

modification of a prior order is in the child's best interests.  (*Id.*, subd. (a); see *In re Marcos G.* (2010) 182 Cal.App.4th 369, 382.)  The petitioner has the burden to show, by a preponderance of the evidence, that there is new evidence or a change of circumstances and that the proposed modification would be in the child's best interests.  (*In re Y.M.* (2012) 207 Cal.App.4th 892, 919; *In re Mickel O.* (2011) 197 Cal.App.4th 586, 615.)  A section 388 petition is an appropriate means to challenge the failure to provide notice as required by law.  (*In re Jackson W.* (2010) 184 Cal.App.4th 247, 258; *In re P.A.* (2007) 155 Cal.App.4th 1197, 1209; *In re Justice P.* (2004) 123 Cal.App.4th 181, 189.)

We review the ruling on a section 388 petition for abuse of discretion, and any factual findings for substantial evidence.  (*In re A.R.* (2015) 235 Cal.App.4th 1102, 1116-1117; *In re Y.M.*, *supra*, 207 Cal.App.4th at p. 920.)  We will not "reverse unless the juvenile court exceeded the bounds of reason, and we have no authority to substitute our decision for that of the [juvenile] court where two or more inferences can reasonably be deduced from the facts."  (*In re D.B.* (2013) 217 Cal.App.4th 1080, 1088-1089.)

Giselle and Danielle do not challenge the factual finding that the Department failed to give notice to Joseph in the manner required by section 291, and substantial evidence supports that finding.  Section 291 requires notice of any hearing after the initial petition hearing by personal service or certified mail, return receipt requested, if the child is detained and "the persons required to be noticed are not present at the initial petition hearing."  (*Id.*, subd. (e)(1).)  The notice must provide specific information regarding the hearing, and must include, among other matters, statements that the court may proceed in the parent's absence, that the parent is entitled to have an attorney present at the hearing, and that the court may appoint an attorney for an indigent parent.  (*Id.*, subd. (d).)  Due process also requires notice to parents of dependency proceedings involving their children.  (*In re Claudia S.* (2005) 131 Cal.App.4th 236, 247 (*Claudia S.*); see *In re J.H.* (2007) 158 Cal.App.4th 174, 182 ["'[u]ntil parental rights have been terminated, both parents must be given notice at each step of the proceedings'"].)

9

The Department sent a notice of the jurisdiction/disposition hearing to Joseph at Lucia's address in Los Angeles by certified mail, even though the dependency investigator knew that Joseph was living in South Africa at the time. The Department also sent Joseph a copy of the Department's detention report, the juvenile dependency petition, and the jurisdiction/disposition report by email prior to the jurisdiction hearing, then spoke with him by phone. Joseph told the dependency investigator that he was unable to return to the United States to attend the hearing. Neither the service by mail nor by email complied with the statutory requirements for notice. (See *In re Jorge G.* (2008) 164 Cal.App.4th 125, 134.) The juvenile court's order granting Joseph's section 388 petition to vacate for failure to provide notice was not an abuse of discretion.

A parent may waive or forfeit the right to challenge a notice defect by appearing in the proceeding without promptly challenging the defective notice. (*In re Wilford J.* (2005) 131 Cal.App.4th 742, 754.) Giselle and Danielle do not contend that Joseph made such a general appearance, and Joseph challenged the defective notice by filing a petition to vacate only two months after he first appeared in this proceeding. Instead, citing *In re Elizabeth M.* (2008) 158 Cal.App.4th 1551, Giselle and Danielle argue that Joseph waived the right to challenge the jurisdiction and disposition orders by failing to appear or request a continuance after receiving actual notice of the hearings. *Elizabeth M.*, however, did not involve defective notice, but a different issue. In that case the father, who had appeared at prior hearings in the case, argued that the juvenile court "denied him due process because it failed to provide him with a 'contested hearing' on the issue of whether jurisdiction should be terminated." (*Id.* at p. 1556.) The court rejected the father's argument, noting that he "was given both notice and an opportunity to attend and be heard on the issue," which was "all due process required." (*Ibid.*) The court also noted that the father's attorney had been "present at the hearing, and voiced no objection to proceeding in his absence." (*Ibid.*) The court in *Elizabeth M.* did not hold or suggest that a parent who did not receive proper notice, and whose attorney did not attend the hearing, waives his or her right to challenge the order.

Giselle and Danielle also cite *Claudia S.*, *supra*, 131 Cal.App.4th 236, in support of their assertion that, in order to justify vacating the prior orders, Joseph had to identify the evidence he would have presented at the hearing and how that evidence would have affected the outcome. *Claudia S.* is also distinguishable. In that case the juvenile court conducted a detention hearing in the family's absence and proceeded to conduct the jurisdiction, disposition, and review hearings while the children and parents were living in Mexico. The parents did not appear through counsel, and the juvenile court did not appoint counsel for them. (*Id.* at pp. 242-243.) The court in *Claudia S.* held that the parents had a due process right to representation by counsel in the proceedings because counsel could have affected the outcome of the proceedings. (*Id.* at p. 251.) *Claudia S.* did not involve a section 388 petition by a previously absent party, and the court did not hold or suggest that the juvenile court can only vacate a prior order if the absent party makes a showing of prejudice.

B.     *Substantial Evidence Supports the Jurisdiction and Disposition Findings on the Subsequent Petition*

1.     *Substantial Evidence Supports the Jurisdiction Findings*

Joseph argues that the evidence does not support the juvenile court's jurisdiction findings that (1) Giselle and Danielle suffered or were at a substantial risk of suffering serious physical harm as a result of his conduct, and (2) Joseph knew or should have known that Lucia abused alcohol when he left the children in Lucia's care.[7] We review these findings for substantial evidence. (*In re I.J.* (2013) 56 Cal.4th 766, 772.)

---

[7]     The Department contends Joseph's challenge to the jurisdiction findings against him is moot because the juvenile court based jurisdiction on the sustained allegations against Lucia. Because the jurisdiction findings against Joseph adversely impact his custody rights and could adversely impact him in future dependency proceedings, his challenge to the jurisdiction findings is not moot. (See *In re J.K.* (2009) 174 Cal.App.4th 1426, 1431-1432.)

11

"'"In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. 'In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.' [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.]"'" [Citation.] 'Thus, we do not consider whether there is evidence from which the dependency court could have drawn a different conclusion but whether there is substantial evidence to support the conclusion that the court did draw.'" (*In re Tyler R.* (2015) 241 Cal.App.4th 1250, 1263, quoting *In re I.J., supra*, 56 Cal.4th at p. 773.)

Joseph does not deny that Lucia's alcohol abuse while Giselle and Danielle were under her care exposed the children to a substantial risk of serious physical harm, nor does he deny that he left the children in Lucia's care while he was in South Africa. He argues, however, that he also left the children in Germaine's care because Germaine was planning to move in with Lucia to help with the children. He also argues that he was not aware of Lucia's alcohol abuse.

Substantial evidence supports the juvenile court's findings. Joseph testified at the jurisdiction hearing on the subsequent petition that before he left for South Africa he knew that Lucia had an alcohol problem. On one occasion before Giselle was born, he had to take the car keys away from Lucia to prevent her from driving while drunk. He was aware of the February 2003 incident where Lucia allegedly drove under the influence with Giselle as a passenger, and he discussed the incident with the Department at the time. Joseph told the dependency investigator in August 2013, "'Lucia has had issues with alcohol since childhood.'" He stated that he knew that Germaine had moved out after less than one month, and that he heard from Lucia's friends a year after arriving in South Africa that Lucia "'was in a terrible place and that the wheels had come completely off.'" Joseph also testified that approximately 18 months after arriving in South Africa

12

he heard that the Department was involved with Lucia "as it relates to the girls and her drinking or something." Yet rather than return to Los Angeles to care for Giselle and Danielle, Joseph remained in South Africa until after the Department had removed the children from Lucia's physical custody. Contrary to Joseph's argument, the fact that the Department did not detain the children sooner does not necessarily mean that the children were safe in Lucia's care. (See § 361, subdivision (c)(1) [removal requires clear and convincing evidence of a substantial danger to the child].)

Joseph also argues that, as of the date of the jurisdiction and disposition hearing, there was no evidence that his past conduct created a substantial risk of the children suffering serious physical harm in the future. A finding under section 300, subdivision (b), based on a substantial risk of serious physical harm requires a showing of the existence at the time of the jurisdiction hearing of a substantial risk that the child will suffer serious physical harm in the future. (*In re Cole Y.* (2015) 233 Cal.App.4th 1444, 1452.) "The court may consider past events in deciding whether a child currently needs the court's protection. [Citation.] A parent's '"[p]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will continue.'" (*In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1383-1384.)

Joseph was aware of Lucia's history of alcohol abuse and her ongoing problems with alcohol, yet he left the children in Lucia's care for an extended period of time, exposing them to a substantial risk of serious harm. His failure to take responsibility for the children in the past despite the apparent danger provided reason to believe that he would fail to take responsibility for them in the future and would not keep them safe from harm. His prior conduct was not an isolated incident, but was a sustained, long-term pattern of disregard for the children's safety. The likelihood Joseph would leave the children again was significantly increased by the fact that he started a new family in South Africa after he abandoned his children here the first time. When asked during an interview why he did not return to take care of Giselle and Danielle when he learned that Lucia's condition had deteriorated, he stated that he was "a spiritual counselor and a spiritual teacher," he had been assured by God that God would take care of his children,

13

and, although he would have preferred to be there for his children, "that is not the journey God sent me on." The juvenile court could also reasonably conclude that Joseph's frequent marijuana use contributed to his failure to protect the children. Substantial evidence supports the juvenile court's finding that Joseph's failure to protect the children created a substantial risk that the children would suffer serious physical harm.

2. *Substantial Evidence Supports the Disposition Orders*

Joseph argues that the evidence does not support the court's disposition finding that placing the children with him would be detrimental to the children's safety, protection, and physical and emotional well-being. There is substantial evidence, however, to support this finding.

Section 361.2, subdivision (a), provides that, if a noncustodial parent requests custody of a child upon the child's removal from another parent's physical custody, the juvenile court must place the child with the noncustodial parent unless the court finds by clear and convincing evidence that such placement would be detrimental to the child's safety, protection, or physical or emotional well-being. (*In re Liam L.* (2015) 240 Cal.App.4th 1068, 1081.) The noncustodial parent need not be "nonoffending" for section 361.2, subdivision (a), to apply. (*In re D'Anthony D.* (2014) 230 Cal.App.4th 292, 301; *In re Nickolas T.* (2013) 217 Cal.App.4th 1492, 1504-1505; but see *In re A.A.* (2012) 203 Cal.App.4th 597, 608 [a parent must be both noncustodial and nonoffending for the statute to apply].) Although section 361.2, subdivision (a), ordinarily applies only at the time of the disposition order removing the child from a custodial parent (*In re Zacharia D.* (1993) 6 Cal.4th 435, 453), it may also apply later in the dependency proceedings if, as here, the failure to properly serve a noncustodial parent deprived that parent of an opportunity to seek custody at the time of disposition. (*In re Suhey G.* (2013) 221 Cal.App.4th 732, 744-745; see *In re Jonathan P.* (2014) 226 Cal.App.4th 1240, 1255 [section 361.2, subdivision (a), applies in some situations "beyond the disposition phase of the proceedings"].) We review a detriment finding under section

361.2, subdivision (a), for substantial evidence. (*In re Patrick S.* (2013) 218 Cal.App.4th 1254, 1262.)

The juvenile court found that placing Giselle and Danielle with Joseph would be detrimental to the children because Joseph was aware of Lucia's alcohol problem and still left the children in her care for an extended period of time, exposing them to a significant risk of serious harm. The court stated that the children were confused by Joseph's departure and that, although he had achieved some reconciliation with them, he was inconsistent and unreliable in his visits and contact with the children after returning from South Africa. The court also found that Joseph's testimony that he kept his marijuana out of the children's reach was not credible, credited Giselle's testimony that the marijuana was accessible, and stated that this was another reason for finding a detriment. Joseph does not challenge the sufficiency of the evidence to support these findings, but argues that the findings do not support the finding of detriment.

Joseph's leaving Giselle and Danielle in Lucia's care for more than three years despite his awareness of Lucia's history of alcohol abuse and her continuing problems with alcohol shows that he failed to take responsibility for the children's well-being. Joseph also used marijuana frequently. He stated that he smoked marijuana whenever he could get it and kept it in an unlocked cabinet. Giselle testified that, when Joseph lived with the family she often saw him smoking marijuana outside by the garage, and that the marijuana was accessible to her. This evidence constitutes substantial evidence supporting the juvenile court's finding by clear and convincing evidence that placing the children with Joseph would be detrimental to their safety, protection, or physical or emotional well-being.

Joseph also challenges the order requiring him to submit to random drug and alcohol testing, which the trial court imposed on Joseph to ensure that he reduced his use of marijuana and alcohol. The juvenile court may make "all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child." (§ 362, subd. (a); *In re Briana V.* (2015) 236 Cal.App.4th 297, 311.) "'[T]he juvenile court has broad discretion to determine what would best serve and protect the child's interest and to

15

fashion a dispositional order in accordance with this discretion. [Citations.] The court's determination in this regard will not be reversed absent a clear abuse of discretion.'" (*In re Corrine W.* (2009) 45 Cal.4th 522, 532.) The problem the juvenile court seeks to address need not be described in the section 300 petition, and the juvenile court can order services to address an issue even if the court does not sustain a particular allegation in the section 300 petition regarding that issue. (See *Briana V.*, at p. 311.)

The court instructed Joseph to ask his doctor for a different pain reliever and advised Joseph that he could seek a change in the order if his doctor concluded that there was no reasonable alternative to marijuana. The court sought to limit the children's exposure to marijuana and evidently was concerned that Joseph's frequent marijuana use would impair his ability to care for the children and would impede family reunification. The drug and alcohol testing order was not an abuse of discretion.

Finally, Joseph argues the juvenile court abused its discretion by ordering monitored, rather than unmonitored, visits with the children. On September 2, 2015, however, the court ordered unmonitored visits for Joseph.[8] Therefore, Joseph's appeal from the prior order for monitored visitation is moot. (See *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1221, fn. 8; *In re Anna S.* (2010) 180 Cal.App.4th 1489, 1498.)

C.    *The Juvenile Court Properly Ordered Family Reunification Services for Joseph*

Giselle and Danielle also challenge the juvenile court's December 18, 2014 order granting family reunification services for both parents. Giselle and Danielle argue that, under two of the reunification bypass provisions in section 361.5, subdivisions (b)(9) and (b)(10), Joseph was not entitled to family reunification services because the juvenile court in the prior dependency proceeding in 2012-2013 found that Joseph had abandoned

---

8    We take judicial notice of this minute order pursuant to Evidence Code sections 452, subdivision (d), and 459.

16

Giselle and Danielle (§ 300, subd. (g)) and he failed to reunify with the children in that proceeding.[9]

"'Section 361.5, subdivision (b) sets forth certain exceptions—also called reunification bypass provisions—to [the] "general mandate of providing reunification services."'" (*In re D.H.* (2014) 230 Cal.App.4th 807, 815.) Section 361.5 provides that the juvenile court may deny reunification services to a parent or guardian when the court finds by clear and convincing evidence that one of the reunification bypass provisions listed in the statute applies. (See *In re J.P.* (2014) 229 Cal.App.4th 108, 124 ["[t]he juvenile court has the authority at the disposition hearing to deny services to a parent under a reunification bypass provision" under section 361.5, subdivision (b)].) Among the bypass provisions enumerated in subdivision (b) are:

"(9) That the child has been found to be a child described in subdivision (g) of Section 300; that the parent or guardian of the child willfully abandoned the child, and the court finds that the abandonment itself constituted a serious danger to the child . . . . For the purposes of this paragraph, 'serious danger' means that without the intervention of another person or agency, the child would have sustained severe or permanent disability, injury, illness, or death. For purposes of this paragraph, 'willful abandonment' shall not be construed as actions taken in good faith by the parent without the intent of placing the child in serious danger.

"(10) That the court ordered termination of reunification services for any siblings or half siblings of the child because the parent or guardian failed to reunify with the sibling or half sibling after the sibling or half sibling had been removed from that parent

---

[9]      Giselle and Daniel also argue that the 12-month period for reunification (§ 361.5, subd. (a)(1)(A)) had expired and that there was no basis under section 366.21, subdivision (g)(1), for extending family reunification services. On September 2, 2015 the court terminated Lucia's family reunification services, and we have taken judicial notice of that order. Therefore, the appeal by Giselle and Danielle from the order granting family reunification services to Lucia is moot. In addition, because the court granted Joseph's petition to vacate, the children's argument that the juvenile court erred by extending reunification to Joseph beyond the 12-month period is not applicable to Joseph.

17

or guardian pursuant to Section 361 and that parent or guardian is the same parent or guardian described in subdivision (a) and that, according to the findings of the court, this parent or guardian has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from that parent or guardian." (§ 361.5, subds. (b)(9), (10).)

Section 361.5, subdivision (c), provides that "[t]he court shall not order reunification for a parent or guardian described in" several of the bypass provisions of subdivision (b), including (b)(9) and (b)(10), "unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the child." Neither counsel for the Department nor counsel for Joseph asked the juvenile court to make a finding under section 361.5, subdivision (c), that reunification was in the children's best interests. The court ordered reunification services for Joseph without expressly ruling on the applicability of the bypass provisions.

The Department and the children disagree on whether the finding of abandonment under section 300, subdivision (g), must be in the current dependency case, or whether a finding under subdivision (g) in a prior dependency case can satisfy the first requirement of section 361.5, subdivision (b)(9). Because there is no subdivision (g) finding as to Joseph in this dependency proceeding, Giselle and Danielle argue that section 361.5, subdivision (b)(9), applies in this case because of the subdivision (g) finding as to Joseph in the 2012-2013 dependency case. The Department states that the language of the (b)(9) bypass provision, "[t]hat the child has been found to be a child described in subdivision (g) of Section 300," is ambiguous as to whether it applies "whenever a child is found to [be] described by subdivision (g) in any proceeding, including prior proceedings," but contends that the better interpretation is that the subdivision (g) finding must be in the current dependency case.[10] The Department argues that the "children's interpretation would allow an order of no reunification in any subsequent proceeding no matter how

---

[10] At the hearing the Department conceded that the argument by counsel for the children "does have legal merit" and "the prior dependency case is relevant."

18

long ago the (g) finding was made and regardless of what the parent's current circumstances are." We also note that some of the bypass provisions, unlike subdivision (b)(9), include references to findings that have previously been adjudicated. (See § 361.5, subds. (b)(3), (b)(6).)

We do not need to resolve this issue of statutory interpretation in this appeal. As noted, substantial evidence supports the juvenile court's findings that Joseph knew or should have known of Lucia's alcohol abuse, and that Joseph knew Giselle and Danielle were at a substantial risk of suffering serious physical harm as a result of his leaving them in Lucia's care. The evidence does not show, however, that Joseph, by leaving Giselle and Danielle in Lucia's physical custody, exposed the children to such a serious danger that without intervention the children would have sustained severe or permanent disability, injury, illness, or death. Indeed, the fact that the juvenile court in the prior proceeding did not detain the children, but instead allowed Lucia to maintain physical custody, suggests the court in that case did not believe at the time there was clear and convincing evidence that remaining in Lucia's physical custody presented a substantial danger to the children's physical health or well-being. (See § 361.5, subd. (c)(1).) Therefore, even if the section 300, subdivision (g), finding against Joseph in the prior proceeding satisfies the first requirement of 361.5, subdivision (b)(9), the juvenile court properly declined to deny reunification services to Joseph under that bypass provision.

Finally, section 361.5, subdivision (b)(10), applies only if clear and convincing evidence shows that the juvenile court previously removed a sibling or half sibling from the parent pursuant to section 361 and later ordered the termination of reunification services because the parent failed to reunify with that child. During the prior dependency proceeding the children remained in Lucia's physical custody, and she received family maintenance services until the court terminated the proceeding in February 2013 with an order granting Lucia legal and physical custody of Giselle and Danielle. Giselle and Danielle have not cited to any evidence that the court in the prior proceeding removed them from Joseph's physical custody under section 361, subdivision (c), or terminated his reunification services. Therefore, section 361.5, subdivision (b)(10), does not apply.

19

**DISPOSITION**


The appeal from the juvenile court's order granting Joseph monitored visitation is dismissed as moot. The other orders are affirmed.



SEGAL, J.


We concur:



PERLUSS, P. J.



ZELON, J.